STATE of Iowa, Appellant,

v.

Charles Leroy SMITH, Appellee.

No. 03–1062.

Supreme Court of Iowa.

June 16, 2004.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney

General, and Peter C. Hart, County Attorney, for appellant.

Thomas M. Magee, Emmetsburg, for appellee.

STREIT, Justice.

Charles Leroy Smith was a passenger in a car stopped for a minor traffic offense. After issuing a citation to the driver, the officer asked Smith for identification. Smith handed over his ID, and the officer quickly radioed to see if Smith had any outstanding warrants. Upon learning there was a valid warrant out for Smith's arrest, the officer took him into custody. During a search, methamphetamine fell out of Smith's pocket.

The district court suppressed the methamphetamine, ruling Smith's Fourth Amendment right against unreasonable seizures was violated when the police officer asked him for identification and checked for an outstanding warrant. Because we find Smith was not unconstitutionally seized, we reverse the district court's ruling to the contrary and remand for further proceedings.

## I. Facts and Prior Proceedings

In March 2003, Deputy Sheriff Eric Ring saw a car waltz through a stop sign in Graettinger. The deputy stopped the car, in which he found a female driver and a male passenger. The deputy took the driver to his patrol car, where he issued her a citation for failure to stop at a stop sign. See Iowa Code § 321.322(1) (2001).

While she was still sitting in his patrol car, the deputy asked the driver if she would wait around while he identified the passenger.[1] The driver agreed, and they returned to the car. The deputy went to the passenger side and asked Smith for identification. Smith gave the deputy a non-operator identification card issued by the Iowa Department of Transportation.

The deputy relayed Smith's identification to his dispatcher in Emmetsburg. The dispatcher informed the deputy that there was an arrest warrant out for Smith in a nearby county. The dispatcher confirmed the validity of the warrant and relayed this information to the deputy. All told, it took less than one minute for the deputy to check Smith's identification.

The deputy ordered Smith out of the car and arrested him on the outstanding warrant. While searching Smith incident to this arrest, a packet of methamphetamine fell out of Smith's pants pocket. Smith

---

[1]. The district court found the deputy also asked the driver for the name of her passenger and she did not know it. At the motion to suppress hearing, the deputy stated:

> I had gone to ... a school in Johnston, Iowa, and they told us many suspicious types of behaviors and what not, and one of those was having weird circumstances as far as not being the person's car they're driving, ... not knowing who the passengers are that they're riding with, ... not even knowing the person that owns the car very well. All those were suspicious, and that is actually the main reason I was suspicious.

See *United States v. Foley,* 206 F.3d 802, 805 (8th Cir.2000) ("an officer may undertake ... questioning of [passengers] to verify information provided by the driver"); *United States v. Johnson,* 58 F.3d 356, 357 (8th Cir.1995) (same); see also *State v. Aderholdt;* 545 N.W.2d 559, 564 (Iowa 1996) (Where a driver's "responses ... raise suspicions unrelated to the traffic offense, the officer's inquiry may be broadened to satisfy those suspicions."). *But see United States v. Mendoza–Carrillo,* 107 F.Supp.2d 1098, 1102 (D.S.D.2000) (fact driver did not know passenger's last name even though he had worked with him for six months does not raise an additional suspicion to warrant questioning passenger). Because it does not affect our resolution of this case, we need not decide whether the deputy's statement supports the district court's findings.

was charged with possession of a controlled substance. *See id.* § 124.401(5).

Smith filed a motion to suppress, alleging a violation of the Fourth Amendment. *See* U.S. Const. amends. IV, XIV. Relying solely upon our decision in *State v. Becker,* 458 N.W.2d 604 (Iowa 1990), Smith argued the deputy was required to have a reasonable suspicion Smith was engaged in criminal activity before making an identification. Smith pointed out that the deputy, when he asked Smith for identification, had already finished issuing a citation to the driver. At the motion to suppress hearing, the deputy admitted the driver was free to leave[2] and that he did not, at any time prior to learning of the arrest warrant, suspect Smith of wrongdoing.

The district court found *Becker* controlled and granted Smith's motion to dismiss. The court interpreted *Becker* to hold "there is no right to approach . . . or inquire of a passenger absent articulable suspicion [of criminal activity]." The court noted, however, that "an officer, faced with these facts, should be able to [identify] the passenger and it would almost appear that he would be derelict in his duty if he did not. . . ."

We granted the State's application for discretionary review. *See* Iowa Code § 814.5(2)(*b*); Iowa R.App. P. 6.201(2002).

## II. Standard of Review

Review of the constitutionality of a search or seizure is de novo. *See State v. Maddox,* 670 N.W.2d 168, 171 (Iowa 2003); *State v. Heuser,* 661 N.W.2d 157, 161 (Iowa 2003).

## III. Merits

The sole issue in this appeal is whether the deputy violated the Fourth Amendment when he asked Smith for identification and checked for outstanding warrants. Smith does not challenge the constitutionality of stopping a vehicle caught running a stop sign, nor searching a defendant incident to arrest on an outstanding warrant. *See State v. Mitchell,* 498 N.W.2d 691, 693 (Iowa 1993) (officer's observation of traffic offense, no matter how minor, justifies stop of vehicle); *State v. Lewis,* 675 N.W.2d 516, 522 (Iowa 2004) (recognizing search incident to arrest exception to Fourth Amendment warrant requirement). Relying upon *Becker,* the district court ruled the Fourth Amendment prohibited the deputy from approaching and questioning Smith absent a reasonable suspicion of wrongdoing on his part. We disagree.

In *Becker,* two brothers were caught speeding down a highway—with fifteen pounds of marijuana and four ounces of amphetamines hidden in a suitcase in the trunk of the car. 458 N.W.2d at 606–07. After stopping the car, the trooper immediately ordered the Becker brothers to alight and identify themselves. *Id.* at 606. We held the trooper violated the passenger's Fourth Amendment rights when he ordered him out of the car absent a reasonable suspicion of wrongdoing on his part. *Id.* at 607–08. In reaching this decision, we recognized that the United States Supreme Court had held *drivers* could be ordered out of a car, but had not yet ruled on whether passengers fell within the scope of the rule. *See id.* at 607 (citing *Pennsylvania v. Mimms,* 434 U.S. 106, 110, 98 S.Ct. 330, 333, 54 L.Ed.2d 331, 336–37 (1977)). In the absence of control-

---

**2.** Smith claims the deputy told the driver she was free to leave. There is no evidence in the record to support this claim, and the district court did not make such a finding.

ling authority, we distinguished the two sorts of cases. We reasoned:

> The situation of the passenger ... is entirely different. The fact that the driver [committed a traffic offense] authorizes the officer to stop the vehicle in which the passenger is riding. The resulting intrusion on the passenger which flows from the initial stop is an unavoidable consequence of action justifiably taken against the driver. Further intrusion is not justified, however, unless some articulable suspicion exists concerning a violation of a law by that person, or unless further interference with the passenger is required to facilitate a lawful arrest of another person or lawful search of the vehicle.

*Id.* We therefore declined to extend *Mimms* to passengers in all routine traffic stops. *Id.* Absent an articulable suspicion of wrongdoing vis-à-vis the passenger (or a need to move the passenger to effectuate a lawful arrest or search), law enforcement officers were not permitted to immediately order passengers from vehicles stopped for routine traffic violations. *Id.*

Seven years after *Becker* was decided, the United States Supreme Court extended the *Mimms* doctrine to passengers. *See Maryland v. Wilson,* 519 U.S. 408, 413–15, 117 S.Ct. 882, 885–86, 137 L.Ed.2d 41, 47–48 (1997). The Court pointed out "the same weighty interest in public safety is present regardless of whether the occupant of the stopped car is a driver or passenger." *Id.* at 413, 117 S.Ct. at 885, 137 L.Ed.2d at 47.

> [A]s a practical matter, the passengers are already stopped by virtue of the stop of the vehicle. The only change in their circumstances ... is that they will be outside of, rather than inside of, the stopped car.

*Id.* at 413–14, 117 S.Ct. at 886, 137 L.Ed.2d at 47. The Court held "an officer making a stop may order passengers to get out of the car pending completion of the stop." *Id.* at 415, 117 S.Ct. at 886, 137 L.Ed.2d at 48. *Wilson,* therefore, overruled *Becker* sub silentio as far as its reliance on the Fourth Amendment.

Even if *Becker* were still controlling, it is distinguishable from the case at bar. We were presented with—and rejected—an argument similar to Smith's over ten years ago. *See State v. Riley,* 501 N.W.2d 487, 488–89 (Iowa 1993). In *Becker,* the officer ordered the passenger out of the car; in this case, the deputy merely asked Smith for identification and checked for outstanding warrants.

In *Riley,* a trooper stopped a car because its driver was not wearing a seatbelt. 501 N.W.2d at 487. After issuing a citation to the driver, the trooper asked the driver for the passenger's name. *Id.* The driver told the trooper the passenger's name, which the trooper recognized but could not place. *Id.* The trooper approached the passenger to talk with him. *See id.*

The passenger argued in a motion to suppress that under *Becker,* the trooper was not permitted to approach or talk to him. *Id.* at 488. We rejected this argument. In relevant part, we stated:

> This is an incorrect interpretation of *Becker* .... *Becker* stands for the proposition that ... immediate removal from the car is clearly an unwarranted intrusion onto the passenger when the officer has no articulable suspicions or need to arrest the driver or make a search. Conversely, we believe that merely talking to a passenger or asking for identification is not the kind of "further intrusion" contemplated in [*Becker*]. Indeed, other jurisdictions have held that merely conversing with passengers, asking them for identification, or directing questions to them is well

within the officer's right and is not illegal.

*Id.* at 489 (citations omitted). We held the trooper "properly began to approach [the passenger] to talk with him or to ask for identification." *Id.* We see no compelling reason to depart from our holding in *Riley*. As our discussion of *Wilson* above reveals, the United States Supreme Court subsequently held law enforcement officers were permitted to order a passenger out of a car, arguably a more invasive "seizure" of a person than asking for and checking a passenger's identification.

Smith stresses his case is different, however, because the stop ended once the deputy issued the driver a citation.[3] After the traffic stop of the driver was completed, the deputy needed, it is argued, a reasonable suspicion vis-à-vis Smith to justify a new stop. *See Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968) (upon a reasonable and articulable suspicion of criminal activity, an officer may briefly stop person); *State v. Kreps*, 650 N.W.2d 636, 641–44 (Iowa 2002) (explaining *Terry* doctrine). Because the deputy admits he did not suspect Smith of any wrongdoing before the dispatcher told him of the warrant, Smith claims the deputy violated his Fourth Amendment rights when the deputy asked for and checked his identification. The State claims the deputy's identification of Smith "followed so closely on the heels" of the issuance of the citation that it should be considered part of the initial stop.

We need not resolve this dispute. In this case we will assume the initial traffic stop ended once the citation was issued. *See United States v. Beck*, 140 F.3d 1129,

1134–35 (8th Cir.1998) (traffic stop complete once officer returned driver's license and rental agreement, issued warning, and told defendant he was free to go); *United States v. White*, 81 F.3d 775, 778–79 (8th Cir.1996) (traffic stop ended when officer returned driver's license and registration, and issued a warning); *United States v. Werking*, 915 F.2d 1404, 1408 (10th Cir. 1990) (traffic stop over once officer returned license and registration to driver); *see also Wilson*, 519 U.S. at 415, 117 S.Ct. at 886, 137 L.Ed.2d at 48 ("an officer making a stop may order passengers to get out of the car *pending completion of the stop*") (emphasis added). Assuming the stop was over once the citation was issued, seizure of Smith required the deputy have a reasonable and articulable suspicion vis-à-vis Smith that criminal activity was afoot. *See Terry*, 392 U.S. at 21–22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906; *Beck*, 140 F.3d at 1134–35. The problem with Smith's argument, however, is that there is no evidence he was seized after the issuance of the citation.

■■■ "The Supreme Court has long recognized that not all police contacts with individuals are deemed seizures within the meaning of the Fourth Amendment." *Pliska v. City of Stevens Point*, 823 F.2d 1168, 1175 (7th Cir.1987); *see State v. Harlan*, 301 N.W.2d 717, 719 (Iowa 1981).

[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen.... The person approached ... need not answer any ques-

---

**3.** We note, however, that in *Riley* the officer had also issued the citation to the driver *before* approaching the passenger. 501 N.W.2d at 487. That said, we were not presented with this issue in *Riley*, and therefore our

decision in that case should not be understood as a rejection of Smith's claim. *Cf. Sager v. Farm Bureau Mut. Ins. Co.*, 680 N.W.2d 8, 14 (Iowa 2004).

tion put to him; indeed, he may decline to listen to the questions at all and may go on his way.... If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed.

*Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983) (citations omitted). As a consequence,

Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage—provided they do not induce cooperation by coercive means.

*United States v. Drayton,* 536 U.S. 194, 201, 122 S.Ct. 2105, 2110, 153 L.Ed.2d 242, 251 (2002).

 To determine whether a seizure has occurred, all circumstances of the encounter must be considered. *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 421, 136 L.Ed.2d 347, 354–55 (1996); *see Drayton,* 536 U.S. at 202, 122 S.Ct. at 2111, 153 L.Ed.2d at 252 (*per se* rules are generally "inappropriate in the Fourth Amendment context"). An encounter with a law enforcement officer remains consensual and does not trigger a reasonable suspicion requirement "[s]o long as a reasonable person would feel free 'to disregard the police and go about his business.'" *Drayton,* 536 U.S. at 202, 122 S.Ct. at 2111, 153 L.Ed.2d at 252 (quoting *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690, 698 (1991); *see id.* at 201, 122 S.Ct. at 2110, 153 L.Ed.2d at 251 ("If a reasonable person would feel free to terminate the encounter, then he or she has not been seized."). In the context of this case, the test "is whether a reason-

able person would feel free to decline the officer['s] requests or otherwise terminate the encounter." *Id.* at 202, 122 S.Ct. at 2111, 153 L.Ed.2d at 252 (quoting *Florida v. Bostick,* 501 U.S. 429, 436, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389, 400 (1991)). For example, there is a seizure when an officer restrains one's liberty by means of physical force or other show of authority. *See State v. Pickett,* 573 N.W.2d 245, 247 (Iowa 1997) (citing *Terry,* 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16, 20 L.Ed.2d at 905 n. 16) and *State v. Johnson,* 395 N.W.2d 661, 664 (Iowa Ct.App.1986)). Standing alone, however, "[m]ere police questioning does not constitute a seizure" under the Fourth Amendment. *Bostick,* 501 U.S. at 434, 111 S.Ct. at 2386, 115 L.Ed.2d at 398.

After reviewing the particular facts of the case at bar, it is clear Smith was not seized. The deputy expeditiously took reasonable measures to identify Smith. The deputy asked Smith for identification; Smith voluntarily complied with the deputy's request and allowed the deputy to check for outstanding warrants.[4] There is no evidence the deputy used a commanding or threatening tone, displayed a weapon, or touched Smith. *See United States v. Hernandez,* 93 F.3d 1493, 1499 (10th Cir.1996); *see also Drayton,* 536 U.S. at 204, 122 S.Ct. at 2112, 153 L.Ed.2d at 253 ("ample grounds" for district court finding of no seizure where "no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice"). The entire episode lasted but a minute; it was no more intrusive to check Smith's identification than to ask him a

4. As the State points out, once the dispatcher told the deputy there was a warrant for Smith's arrest in a nearby county, the deputy had, at the very least, a reasonable suspicion to detain Smith until the warrant could be verified. We do not, then, consider this lapse of time in determining whether Smith was unconstitutionally seized.

few questions. Smith was not seized: under the circumstances, a reasonable person would have felt free to decline the deputy's request for his ID. *See INS v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247, 255 (1984) (noting that although "most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response"); *see, e.g., Pickett,* 573 N.W.2d at 247-48 (no seizure where officer approached man sitting on motorcycle in a ditch and asked him to undergo field sobriety tests); *State v. Ledezma,* 549 N.W.2d 307, 310 (Iowa Ct.App. 1996) (no seizure where officer asked for, but did not order, participation in eyewitness identification); *Johnson,* 395 N.W.2d at 664–65 (no seizure where police officers merely stopped individuals and asked them to identify themselves). *See generally* 4A B. John Burns, *Iowa Practice: Criminal Procedure* § 37.5, at 518 (2004) ("Not all encounters between police and subjects are seizures. Police officers are not precluded from approaching a person on the street and asking the person if he or she is willing to answer questions...."). Because Smith was not seized, the district court should not have granted his motion to suppress.

In reaching this conclusion, we are cognizant of the fact Smith was a passenger, and was thus in some sense not free to leave the scene. Two recent United States Supreme Court cases are instructive. In *Bostick* and *Drayton,* the Court upheld the constitutionality of random drug and weapons interdiction efforts on buses. *Bostick,* 501 U.S. at 434, 111 S.Ct. at 2386, 115 L.Ed.2d at 398; *Drayton,* 536 U.S. at 203–04, 122 S.Ct. at 2112, 153 L.Ed.2d at 253–54. In both cases, police officers randomly boarded buses and asked passengers for identification and consent to search their luggage and persons. In *Bostick,* the de-fendant argued he was seized because, as a passenger on a bus, he was not free to leave the scene—after all, if the passenger would have left, he would have risked becoming stranded or, at the very least, losing his baggage as the bus left without him. The Supreme Court rejected this argument: as a passenger on a bus, the defendant

> would not have felt free to leave ... even if the police had not been present. [The defendant's] movements were "confined" in a sense, but this was the natural result of his decision to take the bus; it says nothing about whether the police conduct at issue was coercive.... [The defendant's] freedom of movement was restricted by a factor independent of police conduct—i.e. by his being a passenger on a bus. Accordingly, the "free to leave" analysis ... is inapplicable. In such a situation, the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.

*Bostick,* 501 U.S. at 436, 111 S.Ct. at 2387, 115 L.Ed.2d at 399–400. For the same reasons, we do not apply a "free to leave" analysis to the facts of this case. A reasonable person in Smith's position would feel free to decline the deputy's requests or otherwise terminate the encounter. *See Delgado,* 466 U.S. at 216, 104 S.Ct. at 1762–63, 80 L.Ed.2d at 255; *White,* 81 F.3d at 778–79 (upon returning defendant's license and registration, and issuing warning, "encounter became nothing more than a consensual encounter between a private citizen and a law enforcement officer"); *accord State v. Williams,* 255 Wis.2d 1, 646 N.W.2d 834, 842 (2002) (motorist not "seized" when officer, after traffic stop was complete, asked for consent to search). At no time did it transcend into an unjustified *Terry* stop.[5]

## IV. Conclusion

Smith's Fourth Amendment right against unreasonable seizures was not violated when an officer asked him for identification and checked for an outstanding warrant. Suppression of the methamphetamine was improper. We reverse the district court's ruling to the contrary and remand for further proceedings.

**REVERSED AND REMANDED.**

---

**5.** In holding the deputy did not seize Smith when he asked for identification and received Smith's consent, we note that we are not presented with the question of whether a defendant may be *required* to identify himself. *Compare Brown v. Texas,* 443 U.S. 47, 52–53, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357, 363 (1979) (state may not arrest or punish individual for refusing to identify himself absent reasonable suspicion he was engaged in criminal conduct), *with Hiibel v. Sixth Judicial Dist. Court,* 118 Nev. 868, 59 P.3d 1201 (2002), *aff'd.,* —— U.S. ——, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004) (state may do so upon a showing of a reasonable suspicion. The Iowa Court of Appeals has vacated a judgment of conviction for interference with official acts for failure to identify absent reasonable suspicion. *See State v. Hauan,* 361 N.W.2d 336, 340–41 (Iowa Ct.App.1984) ("This is not a country where an individual must present his or her green card and proper papers at the whim of a law officer, or face jail.").