WATERMAN, Justice
(dissenting).
I respectfully dissent, both to voice my disagreement with the majority’s fact-specific outcome in this case and, more broadly, to protest my brethren’s divergence from our own precedent and well-settled federal constitutional precedent. I would affirm the district court decision and Judge Mansfield’s well-reasoned majority opinion of our court of appeals that correctly held Pals voluntarily consented to the search of his truck during a fairly benign encounter with Deputy Wubben. The deputy did not violate Pals’ constitutional rights by asking for permission to search his truck after a legitimate traffic stop. The validity of this consent search is solidly grounded on Fourth Amendment search and seizure caselaw, and there is no good reason to hold otherwise under article I, section 8 of the Iowa Constitution.
I. Pals Waived Any Claim the Iowa Constitution Provides Broader Protection Against Searches and Seizures Than the Fourth Amendment.
Today’s divergence from federal authorities was not advocated by any party until our court requested supplemental briefing this year. Although Pals’ appellate brief raised both the federal and Iowa constitutional search and seizure provisions, he never argued our state constitution provided broader protection. To the contrary, he merely stated:
The search and seizure clause of the Iowa Constitution is substantially identical in language to the Fourth Amendment. See Iowa Const, art. I, § 8. The Court consistently interprets the scope and purpose of article I, section 8 of the Iowa Constitution to be the same as federal interpretations of the Fourth Amendment. Breuer, 577 N.W.2d at 44.
The State’s appellate brief did not mention article I, section 8 nor did Pals’ application for further review. Thus, the majority proceeded with its independent analysis under the Iowa Constitution without the urging of any party. The majority thereby altered our practice of using only the federal analysis in addressing constitutional issues when neither party had argued the Iowa Constitution requires a different approach. See, e.g., Reilly v. Iowa Dist. Ct., 783 N.W.2d 490, 494 (Iowa 2010) (“Because Reilly has not advanced a standard for interpreting the due process clause under the Iowa Constitution different from its federal constitutional counterpart, we will apply the general principles as outlined by the United States Supreme Court.”); State v. Bruegger, 773 N.W.2d 862, 883 (Iowa 2009) (applying Federal Eighth Amendment framework because defendant “has not advanced a standard for interpreting the cruel and unusual pun *785 ishment provision under the Iowa Constitution differently”); In re Det. of Garren, 620 N.W.2d 275, 280 n. 1 (Iowa 2000) (refusing to deviate from federal analysis in considering state constitutional claim because appellant “ha[d] suggested no legal deficiency in the federal principles ... nor ha[d] he offered an alternative test or guidelines”).
“Our obligation on appeal is to decide the case within the framework of the issues raised by the parties.” Feld v. Borkowski 790 N.W.2d 72, 78 (Iowa 2010). We should “do no more and no less.” Id. The majority in this case unnecessarily overturns existing law sua sponte. In so doing, the majority violates the admonition so recently reiterated in Feld:
[I]n the absence of the most cogent circumstances, we do not create issues or unnecessarily overturn existing law sua sponte when the parties have not advocated for such a change. In this case, we are restrained to apply the controlling law as advocated by the parties, and we do not consider or forecast whether or not that controlling law should be abandoned or changed....
Id. at 78 n. 4 (citations omitted). The restraint exercised by our court in Feld should have been employed here.
Accordingly, our court should have found Pals waived any claim of greater protection under article I, section 8 when he failed to brief and argue that proposition and, instead, stated both provisions are “consistently interpret[ed] ... to be the same.” See Iowa R.App. P. 6.903(2)(g)(3) (“Failure to cite authority in support of an issue may be deemed waiver of that issue.”); see also State v. Jewett, 146 Vt. 221, 500 A.2d 233, 234 (1985) (declining to reach state constitutional search and seizure question raised by the parties because “neither party has presented any substantive analysis or argument”).
II. Pals Voluntarily Consented to the Search.
The majority correctly concludes that Wubben’s initial stop of Pals was lawful based on probable cause of an ongoing civil infraction — dogs at large. Appellate de novo review of the encounter is facilitated by the DVD recording from the patrol car’s dash camera. Judge Mansfield’s decision accurately describes Wubben’s interactions with Pals leading up to the consent search:
At about 2:00 p.m. Wubben returned on foot to Pals’s vehicle and asked Pals for his proof of insurance. Approximately three minutes elapsed as Pals looked unsuccessfully for his insurance card. At that point, Wubben asked Pals to step into the front of his patrol car. In a cordial way, he asked Pals if he could pat him down for weapons before he got into the car.
At approximately 2:05 p.m., Wubben and Pals entered the front of the patrol car. Once in the car, Wubben and Pals discussed where Pals currently resided and the need for Pals to change the address on his driver’s license. For most of the next five minutes or so, the pair engaged in friendly chatter about where Pals worked, golf, the rainy weather, a washed-out golf tournament, and Pals’s activities of that day and plans to go to a casino. Most of this friendly conversation was initiated by Pals. The need for rabies tags was also discussed. During that time, Wubben apparently prepared some kind of paperwork regarding the failure to have proof of insurance, while assuring Pals that he could call in his insurance information to the sheriffs office and avoid fifty dollars in court costs. At around 2:11 p.m., Wubben casually asked Pals if he could look in his vehicle, and Pals *786 consented. Both got out of the patrol car and went to the truck.
At 2:12 p.m., Pals opened the driver’s door for Wubben. Pals was asked to step in front of the truck, and he complied. After less than two minutes of searching the passenger compartment of the truck, Wubben said, “Oh man.” Pals responded, “What have you got?” Wubben replied, “Green stuff.” ... In total, a half gram of marijuana was retrieved from the truck. Pals denied the marijuana was his and denied knowing it was in the truck. Pals then assisted Wubben’s continuation of the search by opening the passenger door of the truck and pulling the seat forward.
The State proved Pals’ consent was voluntary under the totality of the circumstances. See State v. Lane, 726 N.W.2d 371, 378 (Iowa 2007). These factors include
“personal characteristics of the [consen-ter], such as age, education, intelligence, sobriety, and experience with the law; and features of the context in which the consent was given, such as the length of detention or questioning, the substance of any discussion between the [consen-ter] and police preceding the consent, whether the [consenter] was free to leave or was subject to restraint, and whether the [consenter’s] contemporaneous reaction to the search was consistent with consent.”
Id. (quoting United States v. Va Lerie, 424 F.3d 694, 709 (8th Cir.2005) (emphasis added) (citation omitted)). Pals was forty-six years old with a high school education. He was sober and had no difficulties communicating with Wubben. The twenty-minute traffic stop was not so long as to result in duress. Pals’ behavior was consistent with consent, including that he opened the vehicle doors and pulled the seat forward for Wubben. I agree with the court of appeals’ summary of the fairly benign interaction between Wubben and Pals leading up to the search of his vehicle:
Although Pals was subjected to a pat-down search and was in the police car when consent was given, the circumstances as a whole leave no doubt that his consent was voluntary. The encounter between Pals and Wubben was relatively brief and cordial. The two engaged in very amicable discussion, with most of the conversation being initiated by Pals. Pals sat in the front seat of the police car and was not in handcuffs. Wubben’s request for consent was completely devoid of any coercion, undue pressure, or threats. After providing consent, Pals opened the driver’s side door for Wubben. Accordingly, we conclude Pals’s consent was voluntary.
I would hold Pals’ consent was voluntary under both the Fourth Amendment and article I, section 8 of the Iowa Constitution. The framers of the Iowa Constitution chose to use virtually identical language to duplicate the same constitutional protection against unreasonable searches and seizures as the Fourth Amendment. State v. Nelson, 231 Iowa 177, 185, 300 N.W. 685, 689 (1941) (Mitchell, J., dissenting) (article I, section 8 was the Fourth Amendment “reenacted” in Iowa to apply to the state). Accordingly, we have long given these counterpart provisions the same meaning; see also State v. Breuer, 577 N.W.2d 41, 44 (Iowa 1998) (“‘[T]he language of those clauses is substantially identical and we have consistently interpreted the scope and purpose of article I, section 8, of the Iowa Constitution to track with federal interpretations of the Fourth Amendment.’ ” (quoting State v. Showalter, 427 N.W.2d 166, 168 (Iowa 1988))). Federal authorities are therefore persuasive in construing our Iowa Constitution. See generally People v. Caballes, 221 Ill.2d *787 282, 303 Ill.Dec. 128, 851 N.E.2d 26, 45 (2006) (reaffirming “limited lockstep” approach to construe search and seizure provision of Illinois Constitution consistent with federal case law); Robert F. Williams, The Law of American State Constitutions 194 (2009) (The “clear majority” of “state courts decide to follow, rather than diverge from, federal constitutional doctrine.”).
The majority incorrectly holds Pals’ consent under these circumstances cannot be considered voluntary under article I, section 8 of the Iowa Constitution for four reasons. First, Wubben gave Pals a pat-down search and had Pals empty his pockets. The majority cites no authority holding a pat-down search of the driver renders his consent to search his vehicle involuntary. Courts have repeatedly held persons subject to pat-down searches nevertheless voluntarily consented to searches of their homes or vehicles. See, e.g., United States v. Pedroza, 269 F.3d 821, 827 (7th Cir.2001) (“[Ejven assuming that the pat-down search was illegal ... there was ample evidence that [the suspect’s] consent to the search of his home and his [vehicle] resulted from an independent act of free will and not from any exploitation of the questionable pat-down search.”); United States v. Zubia-Melendez, 263 F.3d 1155, 1163 (10th Cir.2001) (holding suspect’s consent to police vehicle search voluntary despite prior frisk); United States v. Kikumura, 918 F.2d 1084, 1093 (3d Cir.1990) (finding suspect voluntarily consented to a search of his glove compartment despite prior pat-down search), overruled on other grounds by United States v. Grier, 449 F.3d 558, 570 (3d Cir.2006).
Second, the majority relies on the fact Pals gave his consent while seated in the front seat of the squad car. The majority views this setting as “inherently coercive,” relying on several commentators and the decisions of just two other state appellate courts representing a minority view. I disagree that sitting in the front seat of the squad car coerced Pals. As Judge Mansfield noted, “This factor alone is not sufficient, however; otherwise, any consent given by a person in detention would be invalid.” The Supreme Court has made clear that even arrest does not thwart what otherwise appears to be a valid subsequent consent. United States v. Watson, 423 U.S. 411, 425, 96 S.Ct. 820, 828, 46 L.Ed.2d 598, 609-610 (1976) (“[T]o hold that illegal coercion is made out from the fact of arrest and the failure to inform the arrestee that he could withhold consent would not be consistent with Schneckloth and would distort the voluntariness standard that we reaffirmed in that case.”). Our court likewise held that a defendant who is incarcerated may voluntarily consent to a search of his vehicle. State v. Gates, 260 Iowa 772, 775-77, 150 N.W.2d 617, 619-20 (1967). If someone in jail can voluntarily consent to a search of his car, so too can a citizen seated in a squad car.
Placing a suspect on the back seat, where the car doors cannot be opened from the inside, treats him like a prisoner. The front seat, where Pals sat talking with Wubbens, is much less threatening. Citizens pulled over for speeding or other traffic offenses routinely find themselves in the front seat of a squad car. Wubben confronted Pals with fairly innocuous infractions — violation of an ordinance prohibiting dogs at large and failure to produce proof of insurance. They amicably talked through the resolution of those matters. The video shows no intimidation. The district court, upon viewing the DVD and hearing Wubben’s testimony in person, found Pals’ consent to be voluntary. We give deference to the district court’s credibility determination finding Pals’ consent was voluntary. State v. Turner, 630 *788 N.W.2d 601, 606 (Iowa 2001). The court of appeals majority, viewing the same DVD, and Judge Doyle’s dissent all agreed that “Wubben’s request for consent to search the truck was completely devoid of any coercion, undue pressure, or threats, and that Pals’s consent was voluntary.” In State v. Reinders, three policemen arriving in two squad cars accosted a pedestrian late at night under circumstances notably more coercive than Pals’ amiable daytime chat with Wubben, yet this court unanimously found the consent search valid under both the Fourth Amendment and article I, section 8 of the Iowa Constitution. 690 N.W.2d 78, 82-84 (Iowa 2004). Today’s holding cannot be reconciled with Reinders. We should follow our own precedent, not a minority view expressed by courts in other states.
Third, the majority relies on the fact Wubben did not advise Pals he could say no and go. Controlling federal authority does not require such statements. See, e.g., United States v. Drayton, 536 U.S. 194, 207, 122 S.Ct. 2105, 2113, 153 L.Ed.2d 242, 255 (2002) (“[A] presumption of invalidity [does not] attaeh[] if a citizen consented [to a search] without explicit notification that he or she was free to refuse to cooperate. Instead, ... the totality of the circumstances must control, without giving extra weight to the absence of this type of warning.”); 4 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 8.2(i), at 110-11 (4th ed. 2004) (“[V]alid consent may be established without a showing that the police advised the consenting party of his Fourth Amendment rights or that this party was otherwise aware of those rights.”). Our own precedent does not require police to advise persons they can say no to a request to search. Reinders, 690 N.W.2d at 82 (“An individual’s response [to police questioning and requests to search] is considered consensual, even though the person has not been advised that he is free to refuse to respond.”). Further, Wubben asked to search in a casual way: “Say you don’t have anything, any weapons or drugs or anything like that in your vehicle, do you? Do you care if I take a look?” Because Wubben phrased this as a question rather than a command, Pals should have understood he could say no.
Today the majority acknowledges the Schneckloth v. Bustamante Court concluded it would be “thoroughly impractical,” 412 U.S. 218, 227-31, 93 S.Ct. 2041, 2048-50, 36 L.Ed.2d 854, 863 (1973), to require Miranda-type warnings for traffic-stop consent searches. Indeed, the United States Supreme Court recently reiterated that “Miranda is to be enforced ‘only in those types of situations in which the concerns that powered the decision are implicated.’ Thus, the temporary and relatively nonthreatening detention involved in a traffic stop or Terry stop does not constitute Miranda custody.’ ” Maryland v. Shatzer, 599 U.S. -, -, 130 S.Ct. 1213, 1224, 175 L.Ed.2d 1045, 1058 (2010) (quoting Berkemer v. McCarty, 468 U.S. 420, 437, 104 S.Ct. 3138, 3148-49, 82 L.Ed.2d 317, 333 (1984)) (other citation omitted). There is no valid reason to break from this precedent.
The majority “reserve[s] for another day” the question whether to impose a “per se requirement that police advise an individual of his or her right to decline to consent to a search.” Yet, as a practical matter, by holding Pals’ consent involuntary under the record in this case, the majority today effectively invalidates any consent search following a pat down or detention unless the suspect was first told he can say no and go.
Our elected legislature, in its wisdom, can impose by statute a requirement that police tell drivers they have a right to say *789 no and go when asked for permission to search the vehicle. I do not believe we should construe our state constitution to impose such a requirement lacking in our prior precedent and settled Federal Fourth Amendment caselaw.
Finally, the majority finds the “lack of closure of the original purpose of this stop makes the request for consent more threatening.” I disagree. Pals and Wub-ben had already talked through resolutions of the dog and insurance matters. Even if their discussion fell short of “closure,” Wubben made no suggestion of harsher treatment on those minor infractions if Pals refused permission to search.
Consent searches are an important law enforcement tool. Police, with some regularity, capture large quantities of narcotics after the driver gives permission to search his vehicle. Common sense dictates that persons traveling with contraband are more likely to refuse permission to search if told they have the right to do so. I would not handicap our police by imposing a de facto requirement to give such a warning during pedestrian Terry stops or routine traffic stops.
Pals’ consent would be found voluntary under our court’s precedent and under the applicable Fourth Amendment decisions of the United States Supreme Court. I would honor stare decisis and apply that precedent here to promote the predictability, legitimacy, and stability of our state law. See Kiesau v. Bantz, 686 N.W.2d 164, 180 (Iowa 2004) (Cady, J., dissenting) (“It nearly goes without saying that the doctrine of stare decisis is one of the bedrock principles on which this court is built. It is an important restraint on judicial authority and provides needed stability in and respect for the law.”). We should not diverge from well-settled Federal Fourth Amendment precedent unless doing so is justified by differences in the text, structure, or history of the Iowa provision. See generally State v. Schwartz, 689 N.W.2d 430, 438-45 (S.D.2004) (Konenkamp, J., concurring in result) (discussing need for neutral divergence standards). No such grounds for divergence exist in this case.
III. Deputy Wubben Did Not Imper-missibly Expand the Scope of His Investigation.
The majority concludes Pals did not preserve for review the claim Wubben improperly expanded the scope of his investigation by asking to search without a reasonable suspicion. I will nevertheless address this issue to respond to the majority’s dicta. The majority incorrectly asserts federal courts are “divided” on this issue and overlooks controlling Fourth Amendment decisions by the United States Supreme Court in the last six years: Arizona v. Johnson, 555 U.S. 323, 333-34, 129 S.Ct. 781, 788, 172 L.Ed.2d 694, 704 (2009); Muehler v. Mena, 544 U.S. 93, 100-01, 125 S.Ct. 1465, 1471-72, 161 L.Ed.2d 299, 308-09 (2005); Illinois v. Caballes, 543 U.S. 405, 410, 125 S.Ct. 834, 838, 160 L.Ed.2d 842, 848 (2005). The majority also fails to mention our decision in State v. Smith, 683 N.W.2d 542, 546-48 (Iowa 2004), which is directly on point.
I would adopt the well-reasoned court of appeals opinion that applies this court’s decision in Smith, as well as Johnson, Muehler, and Caballes to reject Pals’ contention that Deputy Wubben unconstitutionally expanded the scope of his investigation by asking for permission to search the vehicle. State v. Pals, 2010 WL 447322, *6-7 (Iowa Ct.App.2010).
This court unanimously decided Smith seven years ago. Smith is dispositive. Under Smith, and now-settled Federal Fourth Amendment case law (Johnson, Mena and Caballes), merely asking per *790 mission to search is not a seizure. We could not hold Wubben unconstitutionally expanded the scope of his investigation without overruling Smith. This case involves no allegation of profiling (Pals is Caucasian) — a justification other courts have relied on to prohibit police from expanding the scope of their search absent reasonable suspicion. Nor does the record include any evidence of profiling by Iowa law enforcement. There is no valid reason to overrule Smith.
Y. Conclusion.
For the foregoing reasons, I would affirm the decisions of the district court and court of appeals.