**IN THE COURT OF APPEALS OF IOWA**

No. 17-0836
Filed June 20, 2018

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**WARREN ANTHONY ENGLISH,**
      Defendant-Appellant.
_____

      Appeal from the Iowa District Court for Polk County, Odell G. McGhee II,

District Associate Judge.


      The defendant appeals from the district court's denial of his motion to

suppress.  **AFFIRMED.**


      Andrew B. Duffelmeyer and Thomas A. Hurd of Glazebrook & Hurd, L.L.P.,

Des Moines, for appellant.

      Thomas J. Miller, Attorney General, and Katherine M. Krickbaum, Assistant

Attorney General, for appellee.


      Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**POTTERFIELD, Judge.**

Warren English appeals from the district court's denial of his motion to suppress. English maintains the evidence obtained during the search of his vehicle should have been suppressed because his consent to the search was not voluntary pursuant to the Iowa Constitution. Additionally, he claims trial counsel was ineffective for failing (1) to challenge the duration of the stop as unconstitutional and (2) to advocate for a change under the Iowa Constitution requiring consent to be knowing in order for it to constitute a valid waiver.

**I. Background Facts and Proceedings.**

At approximately 2:45 a.m. on December 20, 2016, Officer Brian Kelley noticed a vehicle being driven without a rear license plate. Officer Kelley initiated a stop of the vehicle and approached the driver-side window. A man—later identified as English—was driving the vehicle, and a female passenger sat in the front seat. Officer Kelley questioned English's lack of rear license plate and also asked for English's driver's license, registration, and proof of insurance. He asked the passenger for her identification as well. While English located the documents, the passenger volunteered the information that she had been walking and English picked her up to take her home. Officer Kelley later testified the passenger appeared to be nervous.

The officer returned to his police vehicle to run both identifications through the police records system and learned the woman had previously been convicted of prostitution. He then returned to the passenger side of the vehicle and had the woman step out. As she did so, Officer Kelley noticed a pocket knife and a condom that had been placed in a holder in the passenger-side door. At the suppression

hearing, Officer Kelley testified that, in his experience, people engaged in prostitution often carry both items. Additionally, he testified he initiated the stop in an area known for higher levels of illegal drugs and prostitution.

After speaking with the woman, Officer Kelley returned to the driver-side window and had English step out of the vehicle. The officer and English stood near the front of English's vehicle; Officer Kelley asked English if he had any weapons on him, and English stated he did not and then lifted his arms. The officer conducted a pat down search of English. English stated he had recently left a pinochle party and was just riding around. The officer asked English if he had cash on him; English said he did not, and the officer asked if he could check his wallet, which English allowed him to do. When asked, English stated he had known the female passenger for years "just from being around." English was able to provide the first name of the woman but did not know her exact last name.[1] English told the officer he had seen the woman out walking and was giving her a ride home. When Officer Kelley responded that English was driving in the wrong direction to take the woman to her home, English responded that he knew that and was "just rolling right now." Officer Kelley then told English the woman had been convicted of prostitution and that a condom was sitting in the passenger door. English denied the condom was his and denied knowing how it got there.

Officer Kelley then asked English if "there was anything [he] needed to know about, anything illegal" in the vehicle. English responded, "No, nothing," and Officer Kelley asked if he could "take a look." English responded, "Yes, you can."

---

[1] When asked, English stated it was "Haynes or Hines or something like that." The woman's last name is Hayner.

The officer told English to step back near one of the squad cars—other officers in other cars had arrived sometime during the stop—and then conducted a search of the vehicle. Officer Kelley located a cigarette container with two small bags of marijuana in it under the driver's seat. English was then placed under arrest. English was later charged with possession of a controlled substance (marijuana), second offense.

English filed a motion to suppress, alleging his consent to search the vehicle was not a valid waiver of his rights because it was not voluntarily given. After a hearing on the motion, the district court denied it, stating, in part: "The Court finds that the requested consent search of the defendant's vehicle did not create[] an environment so coercive that it rendered the consent invalid." The court also denied the suppression motion on the alternative ground of inevitable discovery.

English waived his right to a jury trial and proceeded to a bench trial on the stipulated minutes of evidence. He was found guilty and sentenced to a suspended two-year term of incarceration and two years of probation.

He appeals.

## II. Standard of Review.

We review the district court's denial of a motion to suppress de novo. *State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011). We also review claims of ineffective assistance of counsel de novo. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). De novo "review requires 'an independent evaluation of the totality of the circumstances as shown by the entire record.'" *Id.* (quoting *State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001)). We give deference to the district court's findings

of fact insofar as they rely on the credibility of the witnesses, but we are not bound by such findings. *Id.*

## III. Discussion.

The Fourth Amendment to the Federal Constitution and article I, section 8 of the Iowa Constitution protect individuals against "unreasonable searches and seizures." "Subject to a few carefully drawn exceptions, warrantless searches and seizures are per se unreasonable." *State v. Lewis*, 675 N.W.2d 516, 522 (Iowa 2004). "The State has the burden to prove by a preponderance of the evidence that a recognized exception to the warrant requirement applies." *Id.*

### A. Voluntariness of Consent.

Consent is an exception to the warrant requirement. *See State v. Naujoks*, 637 N.W.2d 101, 107 (Iowa 2001). In order for the consent to be valid, it must be given voluntarily. *See Pals*, 805 N.W.2d at 782 (determining if consent was voluntarily given under the Iowa Constitution). "Consent is considered to be voluntary when it is given without duress or coercion, either express or implied." *State v. Reiner*, 628 N.W.2d 460, 465 (Iowa 2001). In determining whether it was voluntary under the Iowa Constitution, we consider the totality of the circumstances surrounding the giving of the consent. *Pals*, 805 N.W.2d at 782.

In *Pals*, our supreme court looked to four specific factors before deciding the motorist's consent to search his vehicle was not voluntary under the Iowa Constitution. 805 N.W.2d at 782–83. The court considered that at the time the motorist gave consent, the motorist had already been subjected to a pat-down search, was detained in a police vehicle, had not been advised that he was free to

decline his consent, and was not told by the officer that the stop-related business had already been concluded. *Id.*

Here, English had been already been subjected to a pat-down search, which the officer undertook after noticing the pocket knife in the door handle of the passenger door. *Cf. Pals*, 805 N.W.2d at 782 (where the officer conducted a pat-down search, including a command to Pals to empty his pockets, though "[t]here is nothing in the record to suggest [the officer] detected danger from Pals, who was stopped over a civil infraction"). Additionally, English was not advised he had the right to refuse his consent. However, English was aware he could do so. In the video of the stop, which the parties jointly entered into evidence, Officer Kelley can be heard explaining to English why he arrested him and why he believes the drugs found in the vehicle belong to English. English responds, "That's where—that's where it got me. . . . I wouldn't have said 'search my car' if I knew there was weed in it." This is supported by English's not unsubstantial experience with the criminal justice system. *See State v. Pettijohn*, 899 N.W.2d 1, 32 (Iowa 2017) (assessing whether a defendant's consent to a warrantless search was voluntary and considering "personal characteristics of the defendant, such as . . . experience with the law."). Additionally, unlike in *Pals*, English was not seated in the police vehicle at the time the officer requested consent. 805 N.W.2d at 782. Rather, Officer Kelley and English stood near English's vehicle, and English was not handcuffed. Finally, Officer Kelley had not advised English the reason for the stop had concluded, but in fact, it had not. The initial reason for the stop—the vehicle being operated without rear a license plate—may have ended, but after Officer Kelley ran the identifications through the police records system, he had a reasonable

suspicion regarding the two individuals being involved in the crime of prostitution, which Officer Kelley continued to investigate at the time he asked English if he could search his vehicle.

Additionally, there is no reason to believe English was under the influence of drugs or alcohol or otherwise unable to appreciate what was occurring at the time Officer Kelley asked to search. *See Pettijohn*, 899 N.W.2d at 32 (including the defendant's intelligence and sobriety as personal characteristics to consider). While all traffic stops on a public road have "inherently coercive" elements, *see Pals*, 805 N.W.2d at 783, here, Officer Kelley maintained a polite, calm demeanor while speaking with English. Neither his words nor his actions appear coercive in nature. We acknowledge English's claim that members of certain racial minorities may have a more problematic relationship with law enforcement, which can inform an individual's actions and whether they feel they are able to refuse law enforcement's request. However, based on Officer Kelley's actions and demeanor, as well as English's demeanor and responses throughout his interaction with the officer—as seen and heard on the video from the encounter— we find English's consent was voluntary.

Thus, the district court did not err in denying English's motion to suppress.

**B. Ineffective Assistance of Counsel.**

English maintains his trial counsel provided ineffective assistance by failing (1) to challenge the duration of the stop as unconstitutional and (2) to advocate for a change under the Iowa Constitution requiring consent to be knowing in order for it to constitute a valid waiver.

A defendant may raise claims of ineffective assistance on direct appeal if he or she has reasonable grounds to believe the record is adequate to address the claim on direct appeal. *Straw*, 709 N.W.2d at 133 (citing Iowa Code § 814.7(2)). Here, the State concedes the record is adequate.

To establish his claims of ineffective assistance, English has the burden to establish by a preponderance of the evidence that "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *Id.* "A defendant establishes prejudice by showing 'there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Pace*, 602 N.W.2d 764, 774 (Iowa 1999). If either element is lacking, English's claim fails. *See Straw*, 709 N.W.2d at 133.

### 1. Duration of Stop.

English maintains counsel was ineffective for failing to challenge the duration of the stop as unconstitutional. He maintains that the officer unlawfully increased the duration and scope of the initial stop by speaking with the passenger and asking for her identification as well.

Pursuant to *State v. Coleman*, a law enforcement officer making a valid traffic stop supported by reasonable suspicion must terminate the stop when the underlying reason for the stop has been resolved and there is no other basis for reasonable suspicion. 890 N.W.2d 284, 301 (Iowa 2017). But here, the reason for the stop had not been resolved when Officer Kelley requested the identification of the female passenger and she spoke to him, stating that she had been walking and English picked her up to take her home. The officer had only just reached the driver's window and asked English for his information and reason for operating the

vehicle without a license plate; the officer was still standing at the window waiting for English to locate his insurance information when he asked the passenger to provide her identification as well. An officer may ask for the identification of a passenger in a vehicle that has been stopped. *See State v. Smith*, 683 N.W.2d 542, 545 (Iowa 2004) (reaffirming prior holding that an officer may speak with or ask for the identification of a passenger without "articulable suspicions or need to arrest the driver or make a search" (quoting *State v. Riley*, 501 N.W.2d 487, 489 (Iowa 1993))).

Officer Kelley's request for identification from the passenger while he was still waiting to receive English's information was not an unconstitutional expansion of the duration or scope of the stop. Moreover, as English recognizes, once the officer ran the passenger's identification, he had reasonable suspicion of prostitution, which provided a basis for the lawful continuance of the stop. Trial counsel would not have been successful if he raised the issue in the motion to suppress, so English's claim of ineffective assistance fails. *See State v. Greene*, 592 N.W.2d 24, 29 (Iowa 1999) ("[C]ounsel is not incompetent in failing to pursue a meritless issue." (alteration in original)).

### 2. Knowing Consent.

English maintains trial counsel provided ineffective assistance when he failed to advocate for a new standard under the Iowa Constitution requiring consent to be knowing in order for it to constitute a valid waiver.

Here, English's claim fails, as he cannot establish by a preponderance evidence that counsel breached a duty by failing to raise the issue. We acknowledge that best practice may include making arguments that are not yet

accepted parts of Iowa's constitutional jurisprudence—especially as members of our supreme court have expressed interest in this particular issue. *See, e.g.*, *Pals*, 805 N.W.2d at 782 (declining to decide whether a knowing or intelligent waiver of search and seizure rights was necessary as a narrower ground was dispositive). But "an attorney need not be a 'crystal gazer' who can predict future changes in established rules of law in order to provide effective assistance to a criminal defendant." *State v. Schoelerman*, 315 N.W.2d 67, 72 (Iowa 1982); *see also Snethen v. State*, 308 N.W.2d 11, 16 (Iowa 1981) (finding trial counsel was not ineffective for failing to raise issue that would have been foreclosed by Iowa case law as it existed at the time, even though the law was later changed).

As it would be "patently unfair to adjudge" counsel for failing to make an argument that diverges from precedent, *see State v. Liddell*, 672 N.W.2d 805, 814 (Iowa 2003), we cannot say counsel breached an essential duty. Thus, this claim of ineffective assistance fails.

**IV. Conclusion.**

Because we find English's consent to the search of his vehicle was voluntarily given and he has not proven either of his claims of ineffective assistance, we affirm.

**AFFIRMED.**