235 N.J. Super. 232 (1989)
561 A.2d 1196
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
TYRONE CARTER, DENNIS LE-MAR THOMPSON, BARRY EUGENE WILKINS, DARREN KENNETH WHITING, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 1989.
Decided August 4, 1989.
*233 Before Judges O'BRIEN and STERN.
Susan W. Sciacca, Special Deputy Attorney General, Acting Assistant Prosecutor, argued the cause for appellant (John G. Holl, Assistant Attorney General In Charge, Acting Bergen County Prosecutor, attorney; Susan W. Sciacca, of counsel and on the letter brief).
Susan Herman, Assistant Deputy Public Defender, argued the cause for respondents Tyrone Carter, Dennis Le-Mar Thompson and Barry Eugene Wilkins (Alfred A. Slocum, Public Defender of New Jersey, attorney; Susan Herman, of counsel and on the letter brief).
Jerome M. Levine, of the Maryland Bar, admitted pro hac vice in the Law Division, attorney for respondent Darren Kenneth *234 Whiting, relied on the brief and argument of Susan Herman, Assistant Deputy Public Defender.
The opinion of the court was delivered by O'BRIEN, J.A.D.
By leave granted the State appeals from an order suppressing six ounces of cocaine and two electronic beepers seized from an automobile occupied by defendants which was stopped for a motor vehicle violation. We reverse.
At approximately 8:00 a.m. on April 3, 1988, Trooper James Steiger (trooper) was on routine patrol on the New Jersey Turnpike traveling southbound in a marked vehicle. He observed a Nissan 200SX tailgating a Honda in the center lane for approximately three-tenths of a mile. As a result, he activated his overhead light and directed the Nissan to pull over to the shoulder.
As the trooper approached the vehicle, he had his hand on his holster so that his weapon would be easily accessible since he was always concerned for his safety when he stopped an automobile. He bent over slightly as he approached the driver's door and observed the passenger in the right front seat, later identified as defendant Dennis Le-Mar Thompson, make a "movement as to reach underneath the front seat  his shoulders dipped underneath the seat...." The trooper "observed his hand go underneath the seat and then it came back in view." This movement, described as unusual, took approximately two seconds. The gesture alarmed the trooper and aroused his suspicion that the passenger could be concealing a weapon under the seat. Trooper Steiger feared for his safety. When he observed the passenger's hands come back in view empty, he was momentarily relieved because "I could not be hurt if I could see his hands." While closely watching Thompson's hands, the trooper asked the driver, later identified as defendant Darren Kenneth Whiting, for his license and registration. *235 Whiting produced his license, but said he did not know where the registration was.
By this time Trooper McDonough had arrived to assist with the stop and was standing on the passenger side of the Nissan. Starting with Whiting and then Thompson, followed by defendants Tyrone Carter and Barry Eugene Wilkins, who were seated in the rear of the vehicle, one by one each occupant was directed to get out of the vehicle and step to the rear, where Trooper Steiger conducted individual pat-downs with negative results. Trooper Steiger did this for his safety, principally because of the furtive gesture by Thompson. He was looking for weapons. In addition, because the driver was unable to produce the registration for the vehicle, the trooper suspected it may have been stolen. During the course of this procedure, the trooper inquired where the men were coming from. One replied from Connecticut, but another said from New York. This contradiction further aroused the trooper's suspicion. As the pat-down of each man was completed, he was placed under the supervision of Trooper McDonough. While they were not under arrest, they were also not free to leave.
Trooper Steiger was concerned that the four men could overpower Trooper McDonough and reach the area under the seat. He was also concerned that if he issued a summons for the traffic violation and let the men leave, they would have access to whatever was under the seat. The car was a hatch-back with a small interior, such that a person would be able to reach under the front seat from the rear seat.
While Trooper McDonough kept watch, Trooper Steiger entered the vehicle from the passenger side and looked under the front seat where he had seen Thompson reach. About two inches under the seat he found a plastic bag containing a white chunky substance which he suspected was cocaine. It was later confirmed to contain six ounces of cocaine. The four defendants were then arrested, handcuffed, given their Miranda[1] *236 rights, and placed in the police car. Trooper Steiger then resumed searching the Nissan. He looked under the other seats and mats and in the glove compartment. In the center console he found two electronic beepers which he seized since, based on his training and experience, he knew it was common practice for people who deal in narcotics to possess such devices. Although he did not locate the registration for the vehicle, the trooper found a purchase agreement during the course of the search, but he was not sure where it was found. The vehicle had been purchased only a few days previously. Whiting was issued a summons for tailgating.
The motion judge accepted the facts to be as testified to by Trooper Steiger. He described his testimony as follows:
THE COURT: Right now I believe everything this officer said. He's one of the most credible witnesses I've ever seen. And he withstood an exceptionally blistering cross by Mr. Gernert. There is no factual testimony to rebut anything the officer said.
I'm construing not the facts. I accept the facts as he testified to them. There's nothing to contradict them. I'm construing the law.
Defendants were indicted for possession of cocaine with intent to distribute in a quantity of five ounces or more containing at least 3.5 grams of the pure free-base drug (N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(1)), and with possession of cocaine (N.J.S.A. 2C:35-10a(1)). Wilkins and Whiting moved to suppress the evidence seized, as a result of which a hearing was held on January 4 and 5, 1989, on behalf of all defendants. The only witness at the hearing was Trooper Steiger, whose testimony, as noted, the trial judge found totally credible. However, by application of the law as the trial judge conceived it to be, he granted defendants' motion and suppressed the cocaine as the product of an illegal search. The electronic beepers were suppressed as the fruit of the poisonous tree.
*237 While the judge accepted "the factual recitation of the events here as they came uncontradicted from the mouth of the exceptionally credible state trooper," he found the trooper's fear would not be reasonable as a ground to search the passenger compartment of the vehicle. With respect to the State's alternative contention that the search was proper as a search for evidence of ownership of the vehicle, the motion judge said:
Now, I find two fatal flaws with this argument on the part of the State. The first is that this officer was not searching for evidence of ownership. He was clear and candid beyond a dispute that the purpose of his search was evidence of contraband and not evidence of ownership.
If the purpose of his search was evidence of ownership, he was likely to have looked in the first instance in the areas in this automobile where a reasonable person could be expected to store evidence of ownership, and those areas would be the glove box and the console.
On this appeal, defendants do not dispute the motion judge's finding that the trooper had reasonable grounds to stop the vehicle, Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), and consequently had a right to request that the driver alight from the car. Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).[2] The essence of the motion judge's decision, after recognizing the lawfulness of the stop, the request for the occupants to alight from the vehicle, and the pat-down search pursuant to Terry,[3] is that the trooper's continued fear was not a reasonable ground to search the passenger compartment of the vehicle where the trooper had observed Thompson apparently place something. The judge concluded:

*238 You have four occupants who have satisfied this trooper that they possess neither weapons or contraband standing some distance from the front of the vehicle under the guard of an armed State Trooper. If this Trooper Steiger were truly in fear, why would he turn his back to these four occupants and why would he leave them alone with Trooper McDonough?
I do not find that there was sufficient fear here to ground a further search. Moreover, it is inconceivable to me that something under the front seat of that car could harm either of the troopers absent some Star Wars-like device which could have gone off under there, either of its own power or from some remote control device; that if that, these defendants had been patted down and that satisfied the trooper that there was nothing on their persons that was worth searching no further.
Although the motion judge then suggested that the search by the trooper may have been for contraband rather than for a weapon, he had earlier found the testimony of the trooper "exceptionally credible." He had said he believed everything the officer said, and that he was "one of the most credible witnesses I've ever seen," and concluded then, "I accept the facts as he testified to them."
In reaching his decision to suppress the cocaine and electronic beepers, the motion judge made no reference to Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), which dealt specifically with a factual pattern similar to that presented in this case. There, the Court extended the area of a protective Terry search from the person of the detained suspect to a search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, if the police officer possesses a reasonable belief based on "specific and articulable facts which taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." 463 U.S. at 1049, 103 S.Ct. at 3481, 77 L.Ed.2d at 1220. The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. If while conducting a legitimate Terry search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot *239 be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances. 463 U.S. at 1050, 103 S.Ct. at 3481, 77 L.Ed.2d at 1220.
As the United States Supreme Court noted in Long, it was reasonable for the officers to believe that the detained suspect "posed a danger if he were permitted to reenter his vehicle." Ibid. The Michigan Supreme Court, however, in deciding Long, just as the motion judge in this case, appeared to believe it was not reasonable for the police officers to fear that Long could injure them, because he was effectively under their control during the investigative stop and could not get access to any weapons that might have been located in the automobile. However, the Supreme Court of the United States concluded that that reasoning was mistaken in several respects. 463 U.S. at 1051, 103 S.Ct. at 3481, 77 L.Ed.2d at 1221. During any investigative detention the suspect is "in the control" of the officers in the sense that he may be briefly detained against his will. Just as a Terry suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a Terry suspect in Long's position break away from police control and retrieve a weapon from his automobile. Ibid. The Court added that "if the suspect is not placed under arrest, he will be permitted to reenter his automobile and he will then have access to any weapons inside." 463 U.S. at 1052, 103 S.Ct. at 3482, 77 L.Ed.2d at 1221.[4] That is precisely the point in this case. As the officer testified:

*240 Momentarily my fear was alleviated, but I knew I could not put them  I knew there might be something in there. I could not put them back in that vehicle.
....
There was still concern about what there was underneath the seat. It could have been a weapon.
The motion judge recognized and accepted as credible the trooper's testimony as to his observation of a furtive movement by Thompson when he appeared to place something under the right front passenger seat and the fear which this engendered in the trooper. Although the trooper noted that his fear was somewhat abated when he saw Thompson's hands and during the time that the four defendants were out of the vehicle, he specifically testified, as in Michigan v. Long, that he was fearful of having these defendants reenter the vehicle containing the item he reasonably believed to be a weapon placed under the right front seat. As noted, the weapon would be available not only to the right front passenger but, because of the size of the vehicle, to both of the rear seat passengers.
We conclude, by application of the principles of Michigan v. Long, that the search of the passenger compartment of the vehicle as part of the protective Terry search and the consequent seizure of the cocaine found was not an unreasonable search and seizure in violation of the Fourth Amendment.
We recognize, as defendants' counsel argues, that the principle of Michigan v. Long has not been definitively established as a constitutional principle by our Supreme Court under Article I, paragraph 7, of the New Jersey Constitution. Michigan v. Long has been cited frequently by the New Jersey Supreme Court, as well as by this court, for the proposition that the particular decision of the Court rests in part upon state constitutional grounds independent of federal law, and that the federal cases cited in support of the interpretation of the New Jersey Constitution "are being used only for the purpose of *241 guidance, and do not themselves compel the result that [this Court] has reached." State v. Bruzzese, 94 N.J. 210, 217 n. 3 (1983); see also State v. Lewis, 227 N.J. Super. 593, 595 n. 1 (App.Div. 1988).
The only New Jersey Supreme Court case citing Michigan v. Long with reference to a protective search is State v. Hall, 93 N.J. 552, 561 (1983), where it is cited with the parenthetical statement "(permitting police to conduct protective search for weapons in passenger compartment of car upon less than probable cause)." We recently applied the principle of Michigan v. Long in affirming the denial of a motion to suppress in the consolidated cases of State v. Thomas E. Lund and State v. Michael X. Harrison, Docket Nos. A-2235-85T4 and A-2231-85T4, upon which certification was granted, 114 N.J. 480-481 (1989), and argument before the Supreme Court is presently pending.[5]
A petition for certification was also filed on May 17, 1989 by the State in State v. Joseph John Assenza, Docket No. A-579-88T2, in which another part of this court reversed the denial of a motion to suppress evidence, finding the search to have been unreasonable, in factual circumstances not unlike those in this case.[6] There, in conducting the search of the passenger compartment of the automobile, the officer found a black leather jacket under the seat, which he removed. In so doing, he observed a clear bag with green vegetation in plain view in an open pocket. He searched the jacket and found cocaine in another pocket. After the defendants were arrested, the entire vehicle was searched and cocaine was found in the trunk. The furtive movement in that case was not unlike the furtive movement in this case.
*242 As an unpublished opinion, Assenza is not precedent and is not binding upon us. See R. 1:36-3. Furthermore, the Assenza opinion does not cite Michigan v. Long. In any event, the issue is before the Supreme Court which must decide whether to follow the reasoning of Michigan v. Long, or to apply a stricter standard under the New Jersey Constitution. Until the New Jersey Supreme Court has spoken, we are thoroughly satisfied that the decision of the United States Supreme Court interpreting the Fourth Amendment is a proper one, which we believe is completely applicable to the factual situation presented in this case. The observation of former Chief Justice Weintraub in State v. Davis, 50 N.J. 16, 22-23 (1967), cert. den. Davis v. New Jersey, 389 U.S. 1054, 88 S.Ct. 805, 19 L.Ed.2d 852 (1968), perhaps bears repeating as to the balance of values involved in suppression decisions:
Since the Fourth Amendment speaks, not in terms that are absolute but rather of unreasonableness, it necessarily calls for a continuing reconciliation of competing values. Pre-eminent in the galaxy of values is the right of the individual to live free from criminal attack in his home, his work and the streets. Government is established to that end, as the preamble to the Constitution of the United States reveals and our State Constitution, Article I, § 2 expressly says. We want the citizen to forego arms on the strength of that assurance. If the Fourth Amendment is read to frustrate effective law enforcement, government will fail in its primary mission, its promise that the individual shall be secure from attack upon his person and his things.
It is well to remember that the proposition before us is that evidence which undeniably establishes guilt .. . shall be suppressed, not because its probative worth was tainted in the least by the manner in which it was obtained, nor because the Fourth Amendment says it shall be suppressed, but rather because the judiciary, believing it was unable to fashion a remedy for a breach of the Fourth, settled upon the sanction of suppression to induce obedience to its command. Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437 [1444], 4 L.Ed.2d 1669, 1677 (1960); State v. Smith, 37 N.J. 481, 486 (1962), cert. den. 374 U.S. 835, 83 S.Ct. 1879, 10 L.Ed.2d 1055 (1963). [footnote omitted] We should be mindful that while the judge-made sanction supports the right of the individual to be free from wrongful invasion by the State, it tends to deny him protection from grievous invasion by the criminal. For unless we can assume that offenders set free by suppression of patent proof of their guilt will not resume a criminal course, we must recognize that the pain of the sanction of suppression will be felt, not by some abstraction called the `police' or `society,' but by tomorrow's victims, by the innocent who more likely than not will be the poor, the most exposed and the least protected among us. Nor can we fail to *243 note that while the sanction supports the high value inherent in freedom from an unwarranted search, yet in another aspect it works against public morality because the suppression of the truth must tend to breed contempt for the long arm of the law. Such are the stakes, and it is in their light that the unreasonableness of a search must be measured.
For application of these principles in a case involving drugs seized from an automobile, see State v. Boykins, 50 N.J. 73, 81-82 (1967).
In light of our decision that the protective search here was within the principles of Terry, as expanded by Long, we need not address the State's alternate theory that the search was justified in an effort to locate evidence of the ownership of the vehicle.
Reversed and remanded for entry of an order denying the motion to suppress.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), reh'g den. California v. Stewart, 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121 (1966).
[2] No issue has been raised as to the right of the trooper to ask the passengers to step out of the vehicle. The Mimms case involved a request that a driver be asked to step out of the vehicle as a precautionary measure for the officer's safety. There, the Supreme Court observed: "And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile." 434 U.S. at 110, 98 S.Ct. at 333, 54 L.Ed.2d at 336. We have applied the same principle to passengers. See State v. Anderson, 198 N.J. Super. 340, 351 (App.Div.), certif. den. 101 N.J. 283 (1985); State v. Wanczyk, 201 N.J. Super. 258, 265 (App.Div. 1985).
[3] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[4] It is significant that at the time the protective search of the passenger compartment of the automobile was conducted Trooper Steiger had no basis to arrest the defendants, but only grounds to issue a summons for the motor vehicle violation. "... [A] Terry investigation such as the one that occurred here involves a police investigation `at close range' ... when the officer remains particularly vulnerable in part because a full custodial arrest has not been effected, and the officer must make a `quick decision as to how to protect himself and others from possible danger.'" 463 U.S. at 1052, 103 S.Ct. at 3482, 77 L.Ed.2d at 1221-1222.
[5] The defense has supplied us with a copy of its brief filed with the Supreme Court in State v. Harrison and State v. Lund, arguing that the principles of Michigan v. Long should not be adopted in New Jersey.
[6] Defendants have supplied us with a copy of the unpublished opinion in State v. Assenza, which was decided April 28, 1989.