STATE of Iowa, Appellant,

v.

Richard Lee RILEY, Appellee.

No. 91–1735.

Supreme Court of Iowa.

June 16, 1993.

Bonnie J. Campbell, Atty. Gen., Amy M. Anderson, Asst. Atty. Gen., William F. Creasey, County Atty., and Suzanne Elwell, Asst. County Atty., for appellant.

Linda Del Gallo, State Appellate Defender, and Shari Barron, Asst. State Appellate Defender, for appellee.

Considered by McGIVERIN, C.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

The State took discretionary review from a district court ruling granting defendant car passenger Richard Riley's motion to suppress evidence gained from a search during a routine traffic stop.

The court of appeals, being equally divided on the issue, affirmed the district court ruling by operation of law. Iowa Code § 602.5106(1) (1991).

We now vacate the court of appeals decision and reverse the district court ruling.

I. *Background facts and proceedings.* On March 23, 1991, Iowa State Patrol Officer Smith stopped a vehicle driven by John Hesseling because Hesseling allegedly was not wearing his seatbelt.

Trooper Smith approached the driver's side of the stopped vehicle. Smith identified the driver as Hesseling, whom Smith had stopped on a previous date. Smith then asked the passenger in the front seat, Richard Riley, for identification. Riley responded that he did not have any identification with him.

Smith and Hesseling then walked to the back of Hesseling's car. After discussing the reason for the stop and issuing Hesseling a citation for not wearing a seatbelt, *see* Iowa Code section 321.445(2), Smith asked Hesseling the name of the passenger. Hesseling told Smith the passenger was Richard Riley. Smith then permitted Hesseling to return to the car.

Smith began to step around the back of the car towards the passenger's side. Smith testified that he wanted to talk with the passenger because he recognized Riley but could not place him. It later developed

that Smith had arrested Riley on a prior occasion.

As Smith was stepping around the car, he saw Riley make movements which led him to believe Riley had just placed something under the front seat of the car with Riley's left hand. Smith testified he was concerned Riley may have been hiding or getting a weapon and feared for his safety because of this "furtive movement."

Smith then opened Riley's car door and asked him to step out of the car. Smith told Riley to put his hands on the roof and stand with his feet apart. Smith, keeping one hand on Riley's hip, then reached under the passenger side front seat, where Riley had been reaching with his left hand. Smith pulled out a loaded .22 caliber semi-automatic handgun.

Smith allegedly asked Riley, "What's this?" Riley replied that the gun belonged to him. Smith then apparently handcuffed Riley, placed Riley in the patrol car, and asked him what the gun was used for. Riley replied that he used it for target practice.

Smith took Riley to the police station and booked him. A subsequent search of Riley's person revealed two bags of marijuana and a credit card not belonging to Riley.

Riley was charged by trial information with carrying a concealed weapon and possession of a controlled substance. Iowa Code §§ 724.4(1), 204.401(3).

Before trial, Riley filed a motion to suppress the gun and the marijuana evidence, asserting that 1) the stop of Hesseling's vehicle was illegal,[1] 2) there was no probable cause for the search and thus his fourth amendment rights had been violated, and 3) Riley's subsequent statements regarding the gun were inadmissible because he had not been advised of his *Miranda* rights prior to the trooper's questions.

After an evidentiary hearing on the motion, the district court sustained Riley's motion to suppress the gun and marijuana. The court reasoned that under *State v.*

*Becker*, 458 N.W.2d 604 (Iowa 1990), Smith was not permitted to order Riley out of the vehicle without articulable suspicion of passenger wrongdoing or a need to move him in order to facilitate an arrest of the driver or a search of the vehicle. The district court believed Smith had already decided to question and otherwise interfere with Riley before he saw Riley's furtive movements, which intrusion on Riley the court believed would be illegal under *Becker*. The court did not rule on the *Miranda* issue.

We granted the State's application for discretionary review of the district court's ruling. We transferred the case to the court of appeals, which affirmed the district court ruling by operation of law.

We granted the State's application for further review, and now vacate the court of appeals decision and reverse the district court ruling.

We initially note that because of the challenge regarding constitutional rights, our review is de novo. *State v. Aschenbrenner*, 289 N.W.2d 618, 619 (Iowa 1980).

II. *Approaching the passenger Riley.* Riley contends in his motion to suppress that under *State v. Becker*, 458 N.W.2d 604, Smith was not allowed to even approach and talk to Riley. On appeal, the State contends Smith was allowed to approach and talk to Riley. We agree with the State.

In *Becker*, an officer stopped a vehicle for speeding. Approaching the passenger's side of the vehicle, the officer immediately ordered both the driver and the passenger out of the car. *Becker*, 458 N.W.2d at 606. After noticing a knife sheath on the passenger, the officer searched him. Finding the search of the passenger to be illegal, we recognized that the first intrusion on the passenger of initially stopping the vehicle is "an unavoidable consequence of action justifiably taken against the driver." *Id.* at 607. However,

[f]urther intrusion on the passenger is not justified . . . unless some articulable

---

1. On appeal, neither party has addressed the legality of the stop. Therefore, we do not ad-

dress that issue.

suspicion exists concerning a violation of law by that person or unless further interference with the passenger is required to facilitate a lawful arrest of another person or lawful search of the vehicle.

*Id.* Riley claims, and the district court so interpreted, that this language means that an officer is *never* justified in intruding upon a passenger, after the initial vehicle stop, without some articulable suspicion about the passenger or to facilitate a lawful arrest or search.

This is an incorrect interpretation of *Becker.* In *Becker,* the officer immediately ordered the passenger and the driver out of the car upon stopping the vehicle. *Becker* stands for the proposition that such immediate removal from the car is clearly an unwarranted intrusion onto the passenger when the officer has no articulable suspicions or need to arrest the driver or make a search. Conversely, we believe that merely talking to a passenger or asking for identification is not the kind of "further intrusion" contemplated in the above quoted *Becker* language. Indeed, other jurisdictions have held that merely conversing with passengers, asking them for identification, or directing questions to them is well within the officer's right and is not illegal. *See, e.g., State v. Foster,* 557 So.2d 1053, 1054–55 (La.App.1990); *People v. Eichenberg,* 108 Mich.App. 578, 310 N.W.2d 800, 801 (1981); *State v. Gallagher,* 275 N.W.2d 803 (Minn.1979).

We find Trooper Smith properly began to approach Riley to talk with him or to ask for identification.

III. *Furtive movements as basis for search.* After he started to walk towards the passenger's side of the vehicle, Trooper Smith noticed Riley making movements that led him to believe Riley was putting or retrieving something from under the front seat. Smith quickly reached Riley's door and removed Riley. Smith told Riley to place his hands on the car roof and spread his legs. Smith then reached under the front seat and withdrew a loaded handgun.

■ In his motion to suppress, Riley contends his alleged furtive movements, with-

out more, were not enough to justify the search under the front seat. On appeal, the State asserts that the furtive movements were enough to arouse Smith's suspicion and make him fear for his safety. In addition, Riley initially failed to provide identification to Smith. We agree with the State's position.

In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court held that an officer may make a protective, warrantless search of a person when the officer, pointing to specific and articulable facts, reasonably believes under all the circumstances that the suspicious person presents a danger to the officer or to others. In *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the Supreme Court set forth the circumstances in which the search of a vehicle incident to an investigatory, *Terry*-type stop is lawful. The Court stated:

> the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Id.* at 1049, 103 S.Ct. at 3481, 77 L.Ed.2d at 1220 (quoting *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906).

In *Becker,* we stated that an intrusion on a vehicle passenger would be warranted if, among other things, the officer had "some articulable suspicion ... concerning a violation of law" by that passenger. *Becker,* 458 N.W.2d at 607.

Finally, in *Terry,* the Supreme Court specified that a specific and articulable suspicion does *not* mean that the officer must be "absolutely certain that the individual is armed"; rather, the issue is whether a "reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909.

The question, then, is whether Trooper Smith's concern for his safety upon seeing Riley's furtive movements, thus warranting the search under the front seat, was justified under the circumstances. We believe it was.

The Supreme Court in *Long* recognized that "roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." *Long,* 463 U.S. at 1049, 103 S.Ct. at 3481, 77 L.Ed.2d at 1220. Here, Smith testified that he saw Riley reaching down under the front seat. Smith was immediately alarmed by these furtive movements. A reasonable interpretation of these movements was that Riley was hiding or retrieving a gun, thus understandably causing Smith to be concerned for his safety.

Additionally, Smith searched only under the front seat, where he suspected a weapon may be: he limited his search to "what was minimally necessary to learn whether [the suspect was] armed...." *Terry,* 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. Furthermore, by removing Riley from the car and immediately reaching only under the front seat, "it is clear that the intrusion was 'strictly circumscribed by the exigencies which justifi[ed] its initiation.'" *Long,* 463 U.S. at 1051, 103 S.Ct. at 3481, 77 L.Ed.2d at 1221 (quoting *Terry,* 392 U.S. at 26, 88 S.Ct. at 1882, 20 L.Ed.2d at 908).

We note that at least three other jurisdictions, using *Long* and its analysis, have held furtive movements alone are enough to give an officer a specific and articulable suspicion to conduct a protective weapons search of the passenger compartment of a vehicle. *See United States v. Nash,* 876 F.2d 1359 (7th Cir.1989); *State v. Sears,* 493 So.2d 99 (Fla.App.1986); *State v. Carter,* 235 N.J.Super. 232, 561 A.2d 1196 (1989). Some other jurisdictions require furtive movements to be accompanied by additional suspicious circumstances to justify a warrantless search of a vehicle during a stop for a minor traffic violation. *See generally,* Jeffrey F. Ghent, Annotation, *Search & Seizure: "Furtive" Movement*

*or Gesture as Justifying Police Search,* 45 A.L.R.3d 581 (1972 & 1992 Supp.). Here, however, an additional circumstance was Riley's failure to provide identification upon request by Trooper Smith.

On our de novo review of the record, we conclude that under either line of authority the search did not violate the Fourth Amendment; thus, the district court should have overruled Riley's motion to suppress evidence of the gun and marijuana.

IV. *Disposition.* We conclude the circumstances were sufficient to give Trooper Smith an articulable suspicion that Riley may be hiding or retrieving a weapon and to therefore allow a search under the front seat of the car. We vacate the court of appeals decision and reverse the district court ruling granting Riley's motion to suppress the evidence of the gun and the marijuana.

We note Riley's assertions that he was not properly advised of his *Miranda* rights. We will not rule on this *Miranda* issue because the trial court did not rule on it; as such, there is no *Miranda* ruling for this court to review. *See State v. Pelelo,* 247 N.W.2d 221, 226 (Iowa 1976).

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED.**