**IN THE COURT OF APPEALS OF IOWA**

No. 15-1990
Filed July 19, 2017

**DONNIE R. ROSE,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Lee County (South), John M. Wright, Judge.

Donnie Rose appeals the denial of his application for postconviction relief contending trial counsel and appellate counsel rendered ineffective assistance. **AFFIRMED.**

William R. Monroe of the Law Office of William Monroe, Burlington, for appellant.

Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney General, for appellee.

Heard by Danilson, C.J., and Potterfield and Bower, JJ.

**DANILSON, Chief Judge.**

Donnie Rose appeals the denial of his application for postconviction relief (PCR) contending trial counsel and appellate counsel rendered ineffective assistance. Rose maintains officers unconstitutionally prolonged the traffic stop and searched his vehicle, and trial and appellate counsel were ineffective in failing to previously raise these arguments. Because we conclude the traffic stop and search of the vehicle were carried out within constitutional parameters, Rose has not established trial or appellate counsel rendered ineffective assistance, and we affirm the PCR court's ruling denying Rose's PCR application.

**I. Background Facts & Proceedings.**

The facts of this case are stated in our previous opinion, *State v. Rose*, No. 11-0243, 2012 WL 652440, at *1 (Feb. 29, 2012):

> On May 29, 2010, around noon, Iowa State Trooper Paul Rairden observed a Keokuk Contractors van parked on the shoulder of the road in a remote area near a salvage yard. Rairden stated he patrolled the area frequently and thought it was unusual that the van was parked in the industrial area on a Sunday morning.
>
> Rairden pulled up next to the van and rolled down his window to ask if everything was okay. Rairden testified the driver of the van, Donnie Rose, did not roll down his window, but he indicated everything was fine. When Rairden pulled away, Rose also drove away slowly. As the van left, Rairden noticed a passenger in the van he had not initially seen. Rose drove very slowly down the road and rolled through a stop sign without coming to a complete stop. Rairden also noticed that two of the van's brake lights were out.
>
> Rairden turned on his emergency lights and stopped the van. Rairden testified that as he turned on his lights, he saw the passenger of the van, later identified as Joseph Jones, lean over and reach between the driver and passenger seats, making a downward motion. Rairden testified he saw Jones make these furtive movements twice. Rairden testified this worried him because he feared Jones was hiding a weapon.
>
> Rairden approached the driver's side of the van and asked for Rose's license, registration, and insurance information. Rose

produced the requested information, and Rairden asked Rose to come back to his police car. Rose was cooperative. Rairden issued Rose a repair card for the brake lights and a warning for running the stop sign. Rairden testified that once he had Rose in the police car, he requested backup because he intended to search the van and wanted backup there before he did so due to "the furtive movements of the passenger." Rairden and Rose sat in the patrol car while Rairden completed the paperwork; Jones apparently remained in the passenger seat of the van without raising any further suspicion.

Deputy Chad Donaldson arrived as backup, followed shortly by Keokuk Police Officer John Simmons. Rairden turned Rose over to Donaldson and approached the passenger side of the vehicle. Rairden informed Jones he had observed him making furtive movements and needed to check the area to see what Jones had been doing. Rairden had Jones exit the vehicle and stand back with Officer Simmons. Rairden then searched the center console area in which Jones had been reaching and found a box of pseudoephedrine pills, plastic baggies, and a small bag of what appeared to be marijuana. After completing a limited search, Rairden stopped and called the Lee County Narcotics Task Force to finish the search of the vehicle.

Defendant Rose was subsequently charged with manufacturing methamphetamine, possession of a precursor with the intent to manufacture methamphetamine, and possession of marijuana.

The jury trial commenced on December 14, 2010, and the jury found Rose guilty of all three counts. Rose appealed, "asserting the district court erred in denying his motion to suppress because [Trooper] Rairden was not justified in conducting a protective search based solely on passenger Jones's furtive movements." *Rose*, 2012 WL 652440, at *2.

In Rose's first appeal, we likened the facts to those in *State v. Riley*, 501 N.W.2d 487, 488 (Iowa 1993), where the Iowa Supreme Court held the defendant's furtive movements along with additional suspicious circumstances gave rise to the officer's articulable suspicion that the defendant may be hiding or

retrieving a weapon and warranted the officer's limited search for weapons. *See*

*Rose*, 2012 WL 652440 at *3. We then held:

> Just as in *Riley*, in the present case Rairden "testified that he saw [the passenger] reaching down . . . [and] was immediately alarmed by these furtive movements." [*Riley*, 501 N.W.2d at 490]. "A reasonable interpretation of these movements was that [the passenger] was hiding or retrieving a gun, thus understandably causing [the trooper] to be concerned for his safety." *Id.* Further, as in *Riley*, Rairden searched only the center console area in which he saw Jones reaching, where he suspected a weapon might be. *See id.* (noting the officer limited his search to what was minimally necessary to learn whether the passenger was armed).
>
> Finally, we find that, as in *Riley*, additional suspicious circumstances were present in this case. *Riley* suggests that additional suspicious circumstances do not need to be especially incriminating or threatening when viewed in isolation[,] the supreme court found the mere fact that the passenger did not have identification was sufficient to constitute additional suspicious circumstances. *Id.* We conclude the additional circumstances in this case were at least as suspicious as those presented in *Riley*. In the present case, Rairden discovered the van parked in a remote, unusual place at an unusual time, on a Sunday. The driver of the van declined to roll down his window to converse with Rairden when Rairden stopped to ask if he was alright. Further, Rairden testified when he initially pulled up to the van, he did not see a passenger, raising the possibility the passenger may have been hiding.
>
> Accordingly, we conclude Jones's furtive movements were accompanied by additional suspicious circumstances, giving Rairden a specific and articulable suspicion to justify a limited protective weapons search of the area in which he saw Jones reaching.

*Id.* at *3-4. We also noted, however,

> *Riley* involved a protective search conducted immediately or shortly after the furtive movements were observed. . . . [And] Rose did not challenge the search of his van on the basis that the traffic stop had been completed or that the passage of time with Jones sitting alone in the van made the officer's need for self-protection less compelling.

*Id.* at *2 n.1 (internal citation omitted). In this case, Trooper Rairden requested

back-up law enforcement officers before searching the vehicle, requiring Rose to

wait in Trooper Rairden's vehicle for approximately twenty to thirty minutes before other officers arrived.

Rose filed the PCR application on July 17, 2012, and filed an amended application on December 23, 2013. Rose asserted trial counsel was ineffective in failing to renew the motion to suppress based on facts presented at trial and argue the vehicle search exceeded the bounds permitted by *Terry v. Ohio*, 392 U.S. 1, 27 (1968), and *Knowles v. Iowa*, 525 U.S. 113, 118-19 (1998). Rose also asserted trial counsel was ineffective in failing to argue the stop of the vehicle was unconstitutionally prolonged beyond the time reasonably required to complete the traffic stop. Rose asserted appellate counsel was also ineffective for failing to raise these arguments in the first appeal. By agreement of the parties, the matter was submitted to the PCR court without a hearing.

The PCR court held Jones's furtive movements gave Trooper Rairden reasonable suspicion to search for weapons and it would therefore be fruitless for trial counsel to renew the motion to suppress. The PCR court also held the traffic stop was not unconstitutionally prolonged because the stop was permissibly extended based on Trooper Rairden's reasonable suspicion that weapons could be hidden in the vehicle. The PCR court determined neither trial nor appellate counsel rendered ineffective assistance and denied Rose's PCR application. Rose now appeals.

## II. Standard of Review.

"We normally review postconviction proceedings for errors at law." *Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011). "Applications for postconviction relief that allege ineffective assistance of counsel, however, raise a constitutional

claim. We review postconviction proceedings that raise constitutional infirmities de novo." *Id.*; *see also Perez v. State*, 816 N.W.2d 354, 356 (Iowa 2012) ("Where the application alleges constitutional error, our 'review is de novo "in light of the totality of the circumstances and the record upon which the postconviction court's rulings w[ere] made."'" (citations omitted)).

**III. Analysis.**

Rose asserts his PCR application should have been granted because trial and appellate counsel were ineffective in failing to challenge the search of the vehicle on the basis it occurred after the traffic citations were issued and the need for an investigation was over.

"To prevail on a claim of ineffective assistance of counsel, a claimant must satisfy the *Strickland* [*v. Washington*, 466 U.S. 668, 687(1984),] test by showing '(1) counsel failed to perform an essential duty; and (2) prejudice resulted.'" *State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012).

*A. Terry and Knowles.* Rose first contends trial and appellate counsel should have argued Trooper Rairden's search of the vehicle exceeded the bounds of *Terry* and *Knowles* because Trooper Rairden did not reasonably believe Rose and Jones were armed and dangerous as required by *Terry*, 392 U.S. at 27, and because Trooper Rairden was not permitted to search the vehicle incident to the issuance of a traffic citation as held in *Knowles*, 525 U.S. at 117.

In *Knowles* the United State Supreme Court refused to extend the bright-line rule that officers may search incident to arrest to situations involving only the issuance of a citation. 525 U.S. at 118-19. While the Court in *Knowles* acknowledged the threat to officer safety is less significant in a traffic-stop

scenario than during an arrest, it still maintained "officer safety in this context may justify . . . 'minimal' additional intrusion." *Id.* at 117. However, the United States Supreme Court has more recently recognized "[t]raffic stops are 'especially fraught with danger to police officers,' so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." *Rodriguez v. United States*, 135 S. Ct. 1609, 1616 (2015). Notwithstanding the recognition of the danger of traffic stops, in light of *Knowles*, the State may not rely solely upon the issuance of a citation to support a search. *See Knowles*, 525 U.S. at 118-19.

On Rose's direct appeal, we upheld the search because "Jones's furtive movements were accompanied by additional suspicious circumstances, giving [Trooper] Rairden a specific and articulable suspicion to justify a limited protective weapons search of the area in which he saw Jones reaching." *Rose*, 2012 WL 652440, at *4. In reaching this conclusion we relied upon the principles in *Riley*, 501 N.W.2d at 490, which in turn applied the principles in *Michigan v. Long*, 463 U.S. 1032, 1049 (1983), and *Terry*, 392 U.S. at 27.

Here, Trooper Rairden expressed a concern for his safety justifying the additional intrusion of a search of the vehicle, and such a justification is supported by the law. *See State v. Bergmann*, 633 N.W.2d 328, 333 (Iowa 2001); *see also Riley*, 501 N.W.2d at 490.

Additionally, Trooper Rairden's search of the vehicle did not exceed the bounds of *Terry*. *Terry* held:

> [T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where [the officer] has reason to believe that [the officer] is dealing with an

armed and dangerous individual, regardless of whether [the officer] has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that [their] safety or that of others was in danger.

392 U.S at 27. The United States Supreme Court expanded upon the *Terry* ruling in *Long*, 463 U.S. at 1049-50, holding:

[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

Rose now maintains Trooper Rairden and the other officers did not reasonably believe him and Jones to be armed and dangerous so as to justify the limited search of the vehicle based on evidence submitted at trial. Rose contends the trial evidence rebuts any conclusion there was any danger or safety concerns, and counsel was ineffective for failing to renew the motion to suppress at the close of the evidence at trial. We disagree for several reasons.

As we have noted, on Rose's first appeal we already determined Trooper Rairden acted within the bounds of *Riley*, and therefore *Terry*, in searching the vehicle based on a specific and articulable suspicion that there may have been weapons hidden in the vehicle. *Rose*, 2012 WL 652440, at *4. The law-of-the-case doctrine prevents reconsideration of the basis for the search, providing,

[T]he legal principles announced and the views expressed by a reviewing court in an opinion, right or wrong, are binding throughout further progress of the case upon the litigants, the trial court and this court in later appeals." [*State v.*] *Grosvenor*, 402 N.W.2d [402, 405 (Iowa 1987)]. Therefore, under the doctrine, "'an appellate decision becomes the law of the case and is controlling on both the

trial court and on any further appeals in the same case.'" *Bahl* [*v. City of Asbury*, 725 N.W.2d 317, 321 (Iowa 2006)] (quoting *United Fire & Cas. Co. v. Iowa Dist. Ct.*, 612 N.W.2d 101, 103 (Iowa 2000)).

*State v. Ragland*, 812 N.W.2d 654, 658 (Iowa 2012).

Moreover, in conducting a de novo review, as we did in Rose's direct appeal, "we may consider evidence presented at the suppression hearing as well as evidence presented at trial." *State v. Kinkead*, 570 N.W.2d 97, 99 (Iowa 1997). Thus, the failure to renew the motion to suppress at the conclusion of the trial was not prejudicial to Rose. Finally, we are not concerned about the subjective opinion of the officer but rather whether a "reasonably prudent [person] in the circumstances would be warranted in the belief that [their] safety or that of others would be in danger." *Riley*, 501 N.W.2d at 489 (quoting *Terry*, 392 U.S. at 27).

We thus conclude the PCR court properly denied Rose's PCR application with respect to the allegation trial and appellate counsel were ineffective in failing to raise arguments based on *Terry* and *Knowles*, as such arguments would have been meritless. *See State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009) ("[C]ounsel has no duty to raise issues that have no merit.").

*B. Prolonging the Traffic Stop.* Rose also contends trial and appellate counsel should have raised arguments asserting Trooper Rairden unconstitutionally prolonged the traffic stop.

"[A] traffic stop [i]s more analogous to a *Terry*-type stop than a formal arrest. As a result, the federal courts and many state courts have sought to

apply *Terry* principles in evaluating searches and seizures arising from traffic stops." *State v. Pals*, 805 N.W.2d 767, 775 (Iowa 2011).

> Like a *Terry* stop, the tolerable duration of police inquires in the traffic-stop contest is determined by the seizure's "mission"—to address the traffic violation that warranted the stop, and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate th[at] purpose." Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.

*Rodriguez,* 135 S. Ct. at 1614 (alteration in original) (citations omitted). "An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . [the officer] may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 1615; *see also In re Pardee*, 872 N.W.2d 384, 392-93 (Iowa 2015); *Bergmann*, 633 N.W.2d at 335 ("[P]olice cannot unduly prolong their detention of an individual to secure a drug dog or for any other reason without additional suspicion of wrongdoing that warrants expansion of the stop.").

Rose maintains by requiring him to wait for approximately twenty to thirty minutes after the warnings were issued for the arrival of additional officers to provide back-up during the search, Trooper Rairden unconstitutionally prolonged the traffic stop. We might agree if Trooper Rairden had no independent grounds to perform a search.

This case is distinguishable from other cases where it has been held a traffic stop was unconstitutionally prolonged. In *Rodriquez*, the United States Supreme Court held a traffic stop was unconstitutionally prolonged when—after the officer had issued a warning ticked, returned all documents to the driver, and

testified he "got all the reason[s] for the stop out of the way"—the driver was required to wait seven to eight minutes for a drug-dog sniff to be performed around the vehicle's perimeter. 135 S. Ct. at 1613 (alteration in original). The Court explained:

> Unlike a general interest in criminal enforcement, however, the government's officer safety interests stems from the mission of the stop itself. Traffic stops are "especially fraught with danger to police officers," so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely. On-scene investigation into other crimes, however, detours from that mission.

*Id.* at 1616.

Similarly, our supreme court in *Pardee* held a traffic stop was unconstitutionally prolonged after an officer issued traffic warnings and told the driver he was "free to go" but then required the driver to wait for the arrival of a K-9 unit to perform a sniff search of the vehicle. 872 N.W.2d at 388. The court concluded the officer obtained any information that might give rise to an individualized suspicion to justify the dog sniff after the stop was already impermissibly prolonged. *Id.* at 396-97.

Our supreme court also recently revisited this issue in *State v. Coleman*, 890 N.W.2d 284 (Iowa 2017). In *Coleman*, the officer pulled the vehicle over because a check of the license plate revealed the female registered owner had a suspended license. *Id.* at 285. Because it was dark, the officer could not initially tell the driver was not female, but it became apparent the driver was male as the officer approached the vehicle. *Id.* The court held the traffic stop was unconstitutionally prolonged when the officer asked for the driver's license and registration because, after the officer realized the driver was not the female

registered owner with a suspended sentence, there was no valid ongoing traffic stop. *Id.* at 299. The court held, "when the reason for a traffic stop is resolved and there is no other basis for reasonable suspicion, article I, section 8 of the Iowa Constitution requires that the driver must be allowed to go his or her way without further ado." *Id.* at 301.

Oppositely, we conclude Trooper Rairden's extension of the stop was not unconstitutional because addressing officer-safety concerns is part of the mission of a traffic stop, and Trooper Rairden had individualized reasonable suspicion to search the vehicle before issuing any citation.

As to the permissible mission of a traffic stop: "Beyond deciding whether to issue a citation, an officer may make 'ordinary inquiries' incident to the traffic stop, including checking the driver's license, determining whether the driver has outstanding warrants, and inspecting the car's registration and proof of insurance." *State v. Bounmy*, No. 15-2225, 2017 WL 512486, at *5 (Iowa Ct. App. Feb. 8, 2017). Additionally, measures to ensure officer safety are part of the mission of a traffic stop. *See Rodriguez*, 135 S. Ct. at 1616 ("[T]he government's officer safety interest stems from the mission of the stop itself."). In this case, in order to ensure his safety, Trooper Rairden performed a limited search of the center console area of the vehicle where he observed Jones making furtive movements to check for weapons. As such, Trooper Rairden's search of the vehicle was part of the mission of the traffic stop, and the stop was not unduly prolonged.

The traffic stop in this case was not unconstitutionally extended because Trooper Rairden's search was supported by independent reasonable suspicion.

*See Bounmy*, 2017 WL 512486, at *6 (providing that after determining whether the traffic stop was prolonged, "[t]he next question . . . is whether individualized suspicion . . . existed"). In Rose's first appeal, we concluded Jones' furtive movements and the additional suspicious circumstances in this case provided Trooper Rairden specific and articulable suspicion to perform the protective weapons search. *Rose*, 2012 WL 652441, at *4. We are bound by that determination. Because Trooper Rairden encountered Rose and Jones parked in a remote area during an unusual time of day, Rose initially declined to roll down his window to speak with Trooper Rairden, and Jones was observed making furtive movements as Trooper Rairden was initiating the traffic stop, Trooper Rairden had individualized reasonable suspicion to search the vehicle's center-console area for weapons.

We acknowledge Trooper Rairden may not have acted or appeared to have a concern for his safety during the stop, but he did seek a back-up officer before beginning the search. We also acknowledge the argument that reasonable suspicion could dissipate over the twenty-minute delay while waiting for a back-up law enforcement officer. But as observed in *State v. Storm*, ___ N.W.2d ___, ___, 2017 WL 2822483, at *14 (Iowa 2017), the officer was outnumbered, and "[w]hile they caused him no trouble, the next officer on the roadside may not be so fortunate." Accordingly, we find no basis to suppress the evidence. We know of no authority that places a specific time constraint on a legitimate search by an officer in furtherance of ensuring safety nor has Rose cited any such authority. Because the vehicle was a business van with two known occupants and the stop was in a remote area, we conclude it was

reasonable to wait for a second officer to be on the scene before attempting a protective search of the vehicle.

We conclude the traffic stop was not unconstitutionally prolonged and trial and appellate counsel were not ineffective in failing to previously raise this issue. Such an argument would have been meritless, and Rose has therefore failed to establish trial and appellate counsel breached an essential duty or that Rose suffered prejudice.

**IV. Conclusion.**

Because we conclude Rose has not established trial or appellate counsel rendered ineffective assistance, we affirm the ruling of the PCR court denying Rose's PCR application.

**AFFIRMED.**